IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**DONALD M. GRIFFEN**, Individually,
and as an Inmate at Snake River
Correctional Institution,

        Plaintiff,

    v.

**DAVE COOK**, Individually and in his
official capacity as Director of
Department of Corrections; **ROBERT
LAMPERT**, Individually and in his
official capacity as former
Superintendent of Snake River
Correctional Institution;
**JEAN HILL**, Individually and in her
official capacity as Superintendent
of Snake River Correctional
Institution; **MR. LANNY RYALS**,
Individually and in his official
capacity as Health Services Manager;
**CARLA TUPOU**, Individually and in her
official capacity as former Assistant
Superintendent of Snake River
Correctional Institution; **WILLIAM
GIBSON**, Individually and in his
official capacity as Dentist at

Civil No. 02-717-AS

FINDINGS AND RECOMMENDATION

Oregon State Penitentiary; **ROBERT HUFFMAN**, Individually and in his official capacity as Dentist at Oregon State Penitentiary and Snake River Correctional Institution; **GREG SHOOK**, Individually and in his official capacity as Dentist at Oregon State Penitentiary; **SUSAN AUGUSTINE**, Individually and in her official capacity as Dentist at Snake River Correctional Institution; **ERIC WIITATA**, Individually and in his official capacity as Dentist at Snake River Correctional Institution; **ALLAN STEVENSON**, Individually and in his official capacity as Dentist at Snake River Correctional Institution; **VINCENT RIGBY**, Individually and in his official capacity as Dentist at Snake River Correctional Institution; **STEVEN DUNKER**, Individually and in his official capacity as Dentist at Snake River Correctional Institution; **MARTIN SACHSE**, Individually and in his official capacity as Dentist at Snake River Correctional Institution; **TIMOTHEY HUFF**, Individually and in his official capacity as Dentist at Snake River Correctional Institution; **A. HENDRICK**, Individually and in her official capacity as Dental Assistant at Snake River Correctional Institution; **DR. HARTWIG**, Individually and in his official capacity as Medical Staff at Snake River Correctional Institution; **NURSE HODGE**, Individually and in her official capacity as Medical Staff at Snake River Correctional Institution; **LINDA LINDER**, Individually and in her official capacity as Correctional Officer at Snake River Correctional Institution; **MS. WAGNER**, Individually and in her official capacity Correctional Officer at Snake River Correctional Institution; **HEARINGS OFFICER FRANK SERRANO**, Individually and in his official capacity as Hearings Officer at Snake

River Correctional Institution; **HEARINGS OFFICER MYERS**, Individually and in his official capacity as Hearings Officer at Snake River Correctional Institution; **HEARINGS OFFICER POWELL**, Individually and in his official capacity as Hearings Officer at Snake River Correctional Institution; **MR. McNITT**, Individually and in his official capacity as Correctional Officer at Snake River Correctional Institution; **MS. REYES**, Individually and in her official capacity as Correctional Officer at Snake River Correctional Institution; **MS. KAREN RYALS**, Individually and in her former official capacity as Grievance Coordinator at Snake River Correctional Institution; **MS. T. HICKS**, Individually and in her official capacity as Grievance Coordinator at Snake River Correctional Institution; and **MR. EDWARDS**, Individually and in his official capacity as Work Based Education Manager at Snake River Correctional Institution,

       Defendants.

       **DONALD GRIFFEN**
       SID #12358592
       Snake River Correctional
       Institution
       777 Stanton Blvd.
       Ontario, OR  97401

       Plaintiff *Pro Se*

       **HARDY MYERS**
       Attorney General
       **KATHRYN A. COTTRELL**
       Assistant Attorney General
       Department of Justice
       1162 Court Street S.E.
       Salem, OR  97301

       Attorneys for Defendants

**ASHMANSKAS**, Magistrate Judge.

Plaintiff, an inmate at the Snake River Correctional Institution ("SRCI") brings this civil rights action pursuant to 42 U.S.C. § 1983 *pro se*. Currently before the court are Defendants' Amended Motion for Summary Judgment (#79) and Plaintiff's Cross-Motion for Summary Judgment (#133). Plaintiff was advised of federal summary judgment standards by a Summary Judgment Advice Notice (#22) issued by the Clerk of the Court on November 21, 2002.

## SUMMARY OF CLAIMS

Plaintiff alleges Defendants violated his rights under the First, Fifth, Eighth, and Fourteenth Amendments. Plaintiff alleges Defendants were deliberately indifferent to Plaintiff's serious medical and dental needs, violated Plaintiff's due process rights in connection with two misconduct hearings, denied Plaintiff access to the courts, and subjected Plaintiff to religious persecution.

Defendants move for summary judgment on several bases: (1) Plaintiff failed to exhaust available administrative remedies; (2) Plaintiff fails to state a claim upon which relief may be granted against several defendants because they cannot be held liable on a *respondeat superior* theory; (3) Plaintiff's due process, denial of access, and religious persecution claims fail as a matter of

law; and (4) Defendants are entitled to qualified immunity on Plaintiff's Eighth Amendment claims for denial of dental and medical care.

## SUMMARY OF FACTS

### I. Dental Care

Plaintiff was admitted to custody of the Oregon Department of Corrections ("ODOC") on May 26, 1998. On May 28, 1998, Plaintiff received a initial dental examination at the Oregon Correctional Intake Center ("OCIC"). On June 4, 1998, Plaintiff was transferred to the Oregon State Penitentiary ("OSP"), and on March 4, 1999, he was transferred to SRCI.

The dentist who performed the initial examination at OCIC rated Plaintiff's oral hygiene as "fair," and noted that periodontal services were indicated. As part of the examination process, bite-wing x-rays were taken of Plaintiff's teeth. The examining dentist recommended, *inter alia*, that Plaintiff receive periodontal treatment.

On June 5, 1998, Plaintiff sent a written request to the OSP dental clinic requesting a dental appointment and stating he was beginning to experience dental pain. On June 16, 1998, Plaintiff was scheduled to be examined by a dentist on July 1, 1998, the next available appointment. Plaintiff was seen on June 14, 15,

24, and 26, 1998, by OSP medical staff, who did not record any complaint of dental pain.

On July 1, 1998, Defendant Dr. Huffman examined Plaintiff, and recommended immediate extraction of tooth #19. Plaintiff signed an informed consent for the extraction, which Dr. Huffman performed that day. Dr. Huffman also prescribed a pain reliever, Orudis, for control of any post-extraction dental pain.

On July 6, 1998, Plaintiff sent an inmate communication to the OSP dental clinic requesting he be scheduled for a non-emergency dental cleaning. On July 10, 1998, Plaintiff was informed he would be scheduled for a full evaluation, but that the earliest appointment was likely to be several months in the future. Plaintiff was not seen again by a dentist at OSP at any time prior to his March 4, 1999, transfer to SRCI. Defendants attribute the lack of treatment during this period to a severe shortage of available dentists and the fact that Plaintiff did not have an urgent need for dental treatment, as evidenced by the lack of any record that he complained of dental pain at any time after June 5, 1998.

On April 13, 1999, Plaintiff submitted an Inmate Communication requesting treatment as follows:

> I need dental work. I waited on the dental list for 10 months at OSP. Now, most of the teeth I thought could be saved have broken. I would like to get my teeth worked on it [sic] order to save what I can.

Plaintiff was advised he would be scheduled, but warned that the list was long and it would be some time before he could get in. He was further advised to sign up for sick call if he had a specific problem, so a nurse could evaluate the situation. Plaintiff presents evidence that no dentist was employed at SRCI during the time period from March 4, 1999, when he arrived, until October 22, 1999.

Plaintiff again requested dental treatment in August 1999. He did not complain of specific problems or pain, but stated he had waited 10 months at OSP and another 5 months at SRCI for routine dental care, and that due to the long wait some of his teeth may no longer be repairable. Plaintiff was again advised he would be scheduled as soon as an opening became available, but that he would not be moved ahead of other inmates. Plaintiff was also advised to sign up for sick call if he was experiencing pain.

On January 19, 2000, Plaintiff went to sick-call, and reported a lost filling and tooth that was painfully cutting his tongue. The nurse examined his teeth, filled out a dental referral, and advised Plaintiff send a kyte to dental services. On January 20, 2000, Plaintiff submitted an Inmate Communication indicating the filling had fallen out, and the sharp edges of his tooth were cutting into his tongue. Plaintiff complained the condition was quite painful, and reiterated his lack of dental

care.  On January 21, 2000, Defendant Hendrick notified Plaintiff he was scheduled for treatment.

On February 9, 2000, Plaintiff submitted an Inmate Communication requesting information on when he would be seen by a dentist.  On February 10, 2000, Defendant Hendrick notified Plaintiff he was scheduled "toward the end of the month." Defendant Dr. Stevenson indicates Plaintiff was scheduled for treatment on February 25, 2000, and March 13, 2000, but that both appointments were cancelled due to the dentist's illness.

On April 2, 2000, Plaintiff submitted another Inmate Communication asking when he would be seen for the broken tooth complained of on January 20.  Defendant Hendricks informed Plaintiff the dentist was ill in February and March, and that he had been re-scheduled.

On May 3, 2000, 103 days after Plaintiff's initial complaint, Defendant Dr. Huffman examined Plaintiff's teeth.  Dr. Huffman performed a sedative fill on tooth #30.

A sedative fill is a material placed in a large tooth cavity near the pulp or nerve (inside the tooth) to soothe/sedate the nerves of that tooth.  The remaining space in the tooth cavity is filled with a temporary filling.  The temporary filing, which can last two years or longer, is necessary in case the sedative fill does not give complete relief for the patient and further dental care is needed.  In Plaintiff's case, Dr. Stevenson indicates the

sedative fill was placed prophylactically because of the size of the tooth cavity, not because Plaintiff complained of any dental pain.

At the May 3, 2000, appointment, Plaintiff asked Dr. Huffman when he would be able to get the rest of his teeth worked on, and was told it would be a while. Dr. Stevenson indicates that because of extreme time constraints existing at the time and the long waiting list of patients with more urgent dental needs, Plaintiff did not have any further dental procedures performed at that time.

On August 21, 2000, Plaintiff submitted an Inmate Communication requesting whether the May emergency repair affected his placement on the list for routine dental services. Plaintiff noted he had been on the waiting list for 25 months. Plaintiff was informed he was "scheduled."

On November 10, 2000, Plaintiff attended sick-call and asked the medical staff to declare a dental emergency because a filling had fallen out. Plaintiff was instructed to submit a kyte, which he did on November 11, 2000. On December 13, 2000, Defendant Dr. Wiitala examined Plaintiff, replaced the temporary filling in tooth #30, and noted that tooth #3 needed to be filled. Plaintiff again requested treatment for the rest of his dental needs. Again, however, time constraints and the long waiting list of

patients with more urgent dental needs prevented Plaintiff from having any further dental procedures performed at that time.

Plaintiff submitted Inmate Communications requesting routine dental services on June 22, September 19, and November 14, 2001. Plaintiff indicated the length of time he had been waiting and the need for treatment and, in the September 19 kyte specified that pain relievers were not helping and dental pain was keeping him up at night. Each time, Plaintiff was informed he was "on the schedule." On February 5, 2002, Plaintiff submitted an Inmate Communication to Canteen Services, asking if he could purchase a toothache remedy, but was informed the product he requested was not available.

On February 19, 2002, Plaintiff submitted an Inmate Communication noting he had been waiting for routine dental care for 45 months, reporting that his temporary filling had fallen out again, and describing his situation as follows:

> I am in extreem [sic] pain. Over the years I have repeatly [sic] reported my teeth breaking, the pain, and deteration [sic] of my dental condition.
>
> I have been told that the dentist determines who will be seen. I understand that. What I can not understand is how he decides that I do no need to be seen, when he has never done an exam on me.
>
> The pain is mind numbing. I am having a difficult time just writing this kyte. Please see me ASAP so that I can stop hurting and get on with the work I have been waiting so long for.

On March 1, 2002, Defendant Dr. Stevenson examined Plaintiff for the first time. He informed Plaintiff tooth #18 could not be salvaged because it was so badly decayed, and recommended extraction. Plaintiff signed an informed consent, and the tooth was extracted. Plaintiff states he only consented after asking whether the tooth could be saved, to which Dr. Stevenson replied he would have to request a root canal and crown from the TLC committee, and that the tooth would likely become infected again before approval was received. Plaintiff also requested treatment for his other dental needs, which was refused.

In preparation for Defendants' summary judgment motion, Dr. Stevenson reviewed the initial examination bite-wing x-rays and concluded Plaintiff's teeth were in extremely poor condition, and that he had abnormal periodontium (gums, ligaments, and bony support of his teeth) consistent with long-standing poor dental practices prior to incarceration. Dr. Stevenson opines that Plaintiff's long-standing inadequate oral hygiene and resulting pre-existing oral condition let to Plaintiff's tooth loss and decay. In his opinion, the delay in dental treatment after Plaintiff's incarceration did not change the outcome for tooth #18.

On March 21, 2002, Plaintiff submitted a Grievance Form complaining that dental services refused to treat his serious dental needs. He requested his teeth be repaired. Betty Wilson,

Health Services Supervisor, reviewed Plaintiff's dental records and noted the dental clinic was aware of Plaintiff's problems and had placed him on their "recall schedule" after the March 1, 2002, appointment with Dr. Stevenson.  Ms. Wilson further stated:

> Please be assured that the dental department is not refusing to treat you; because of the number of patients at SRCI and the limited amount of time we have dentists all problems are triaged and treated accordingly.

On August 17, 2002, Plaintiff was examined by Defendant Dr. Rigby.  Dr. Rigby recommended extraction of teeth #4, #13, and #14, because they were decayed beyond repair.  Plaintiff signed an informed consent, and the teeth were extracted.  Plaintiff states he again disagreed, but signed the consent out of fear that continued delay in treatment would allow deterioration of his remaining teeth.

On April 20, 2003, Plaintiff submitted an Inmate Communication stating his fillings and teeth were still breaking, asking whether he was scheduled to receive further dental work promised at the August 17, 2002, appointment.  Plaintiff was examined by Dr. Huffman on May 21, 2003, who filled tooth #30 with a sedative fill and more permanent composite.  Another tooth repair was completed in July 2003.  From the time Plaintiff was initially incarcerated in 1998 to the present, Plaintiff has not received the routine dental care and cleaning recommended in his initial dental examination.

## II. **Medical Care**

Upon arrival at SRCI, Plaintiff had two prescribed medications: (1) liquid *Tolnaftate*, a topical solution used to treat nail fungus infections; and (2) *Effexor* tablets prescribed for the treatment of depression.

In April 1999, Plaintiff complained to the SRCI pharmacy that the allotted 10 ml. bottle of *Tolnaftate* was insufficient to last an entire month. The pharmacy thereafter allowed Plaintiff two bottles per month. In November 2000, liquid *Tolnaftate* was removed from the pharmacy formulary and no longer required a prescription. *Tolnaftate* cream was instead made available for purchase by inmates from the facility canteen.

In May 1999, Plaintiff experienced difficulties obtaining aspirin from correctional officers in the Disciplinary Segregation Unit ("DSU") for a headache. Inmates in DSU may purchase aspirin through the DSU canteen. If the inmate is indigent, he can apply for indigent aspirin through the facility's business office. Plaintiff obtained some aspirin, and eventually the headache went away.

Plaintiff received his *Effexor* medication regularly. While in DSU, he received it at morning and evening rather than morning and noon, because there is no noon med-line in DSU. On one occasion, the pharmacy mistakenly filled Plaintiff's *Effexor*

prescription with long-acting pills, but the mistake was corrected and thereafter Plaintiff received the prescribed short-acting pills.

Plaintiff states that an unidentified prescription medication expired in October 2002, and had not been renewed as of December 13, 2002. Defendant Dr. Hartwig notes that two prescriptions, for *Benadryl* and *Lidex* cream expired on October 16, 2002. Other prescriptions for *Ketoprofen* and *Effexor* remained valid. The *Benadryl* and *Lidex* prescriptions were renewed on December 16, 2002. Plaintiff does not present any evidence he suffered medical issues as result of the relatively short lapse of the *Benadryl* and *Lidex* prescriptions.

### III. **Denial of Access to the Courts**

Plaintiff contends his access to the courts was denied because unqualified legal assistants failed to advise him of the need to exhaust administrative remedies under the Prison Litigation Reform Act, and the SRCI law library did not contain information on the Prison Litigation Reform Act in 1992, when he filed this action. Plaintiff also contends he received inadequate physical access to the law library and inmate legal assistants.

The SRCI law library is the most comprehensive of all the ODOC facilities' law libraries, and has a full complement of printed materials such as digests, statutes, and rule books, as

well as the capacity for electronic legal research. From December 20, 2001, through May 1, 2003, Plaintiff requested and received 74 hours on the legal research computer, 4 hours access to other legal research material, 5 hours with a legal assistant, and 225 hours on a word processor or typewriter.

## IV. **Due Process**

On August 26, 2001, Defendant Officer Linder issued a misconduct report charging Plaintiff with Destruction of Property I, Disrespect II, Disobedience of an Order I, and Unauthorized Area I. The charges were based upon allegations that Plaintiff approached a Control Center and stuck his hand and arms through a key drawer, then knocked on a window in an attempt to get correctional officers to open a door so he could attend med-line. Upon being ordered to step away from the control center, Plaintiff argued with the correctional officer.

On August 28, 2001, Defendant Serrano conducted a disciplinary hearing on the misconduct report in accordance with ODOC Administrative Rules. Plaintiff denied the allegations, and requested that an investigator interview other inmates who were in the area at the time of the incident. Defendant Serrano granted Plaintiff's request, and postponed the hearing pending the investigation.

On September, 11, 2001, the hearing was reconvened. Defendant Serrano considered the evidence, including information

the Hearings Investigator obtained through inmate interviews, and found Plaintiff guilty of Destruction of Property, Unauthorized Area I, and the lesser-included violation of Disrespect III. Defendant Serrano recommended sanctions totaling fourteen days of segregation and seven days of loss of privileges upon release from DSU.

On June 3, 2002, Defendant Officer King issued a misconduct report charging Plaintiff with Disobedience of an Order I. The charge was based upon Plaintiff's failure to timely return to his seat in the law library when ordered. On June 6, 2002, Defendant Powell conducted a disciplinary hearing in accordance with ODOC Administrative Rules. Upon considering testimony from Officer King and Plaintiff, Defendant Powell found Plaintiff guilty of the lesser-included rule violation of Disobedience of an Order II, and recommended four days of disciplinary segregation from June 3, 2002, to June 6, 2002, and ten days' loss of privileges upon release from segregation.

On August 22, 2002, Defendant Officer McNitt issued a misconduct report charging Plaintiff with Disrespect II, Disobedience of an Order I, and Unauthorized Area I. That misconduct report was dismissed without prejudice and Defendant McNitt was allowed time to re-submit the charges. He did so, and on September 5, 2002, Defendant Hearings Officer Myers opened a disciplinary hearing.

At the hearing, Defendant Myers refused Plaintiff's request to dismiss the misconduct report on a procedural ground, and allowed Plaintiff a continuance to adequately prepare. The hearing was reconvened on September 12, 2002, and, after considering testimony from Officer McNitt and Plaintiff, Defendant Myers found Plaintiff guilty of lesser rule violations of Disrespect III and Disobedience of an Order III, and dismissed the charge of Unauthorized Area I. Defendant Myers recommended no sanction for the Disrespect III charge, and seven days of segregation (with credit for time served) on the Disobedience of an Order II charge.

## V.  **Religious Persecution**

Plaintiff initially refused to participate in institutional secular cognitive programs such as "Pathfinders," "COG I," and "COG II" on the basis that they conflict with his Christian religious beliefs. Participation in these programs makes inmates eligible for certain privileges, such as privileged housing assignments. Plaintiff alleges alternative, religion-based programs, while available, do not count toward such privileges. Defendants present evidence that Plaintiff signed up for the waiting list to participate in Cognitive Skills I after this action was initiated, and is now considered "program compliant" and eligible for privileges.

## **LEGAL STANDARDS**

Summary judgment should be granted if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). If the moving party shows that there are genuine issues of material fact, the non-moving party must go beyond the pleadings and designate facts showing an issue for trial. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986). A scintilla of evidence, or evidence that is merely colorable or not significantly probative, does not present a genuine issue of material fact. <u>United Steelworkers of America v. Phelps Dodge</u>, 865 F.2d 1539, 1542 (9th Cir.), <u>cert. denied</u>, 493 U.S. 809 (1989). The substantive law governing a claim determines whether a fact is material. <u>T.W. Elec. Service v. Pacific Elec. Contractors</u>, 809 F.2d 626, 630 (9th Cir. 1987). Reasonable doubts as to the existence of a material fact issue are resolved against the moving party. <u>Id</u>. at 631. Inferences drawn from facts are viewed in the light most favorable to the non-moving party. <u>Id</u>. at 630-31.

## **DISCUSSION**

## **I.    Exhaustion of Administrative Remedies**

The Prison Litigation Reform Act of 1995 amended 42 U.S.C. § 1997e to provide that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other

Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is mandated, regardless of the relief offered through the prison administrative procedures. Booth v. Churner, 532 U.S. 731, 121 S.Ct. 1819, 1825 (2001). The requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong. Porter v. Nussle, 534 U.S. 516, 122 S.Ct. 983, 988-89 (2002).

Nonexhaustion under § 1997e(a) is an affirmative defense -- defendants have the burden of raising and proving the absence of exhaustion. Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir.), cert. denied, 540 U.S. 810 (2003). It should be raised in an unenumerated Rule 12(b) motion rather than in a motion for summary judgment. Id. In deciding such a motion -- a motion to dismiss for failure to exhaust nonjudicial remedies -- the court may look beyond the pleadings and decide disputed issues of fact. Id. at 1119-20. If the court concludes that the prisoner has not exhausted nonjudicial remedies, the proper remedy is dismissal without prejudice. Id. at 1120.

Defendants argue Plaintiff failed to exhaust his administrative remedies because he did not try to resolve the matters underlying this complaint through ODOC's inmate grievance

process set forth in O.A.R. 291-109-005 through 291-109-0060. Under these rules, inmates may file grievances as to the conditions of their confinement, improper treatment by staff (*e.g.*, unprofessional conduct or assaultive behaviors), lack of medical treatment, and oversight or error affecting the inmate. *See* O.A.R. 291-109-0015(2).

Defendants contend Plaintiff failed to exhaust his administrative remedies and, as such, all claims must be dismissed. Defendants do not address exhaustion as to each separate claim, however. Instead, they focus solely on Plaintiff's dental care situation.

Defendants present evidence that Plaintiff submitted seven grievances, six of which were returned to Plaintiff unprocessed with instructions on how to correctly file them. As Plaintiff counters, however, nothing in the administrative rules addresses the return of grievances unprocessed. Moreover, when the grievances are returned without processing, no mechanism allows prisoners to appeal the return.

One of Plaintiff's grievance, related to Plaintiff's continual requests for dental treatment, was processed as submitted. Health Services responded to the grievance positively, indicating Plaintiff was on the dental schedule to receive the care requested. Understandably, Plaintiff did not appeal this positive response.

Defendants have not satisfied their burden of proof on the affirmative defense of failure to exhaust administrative remedies.[1] At best, a genuine issue of material fact exists over the efficacy of the grievance system and Plaintiff's attempts to comply therewith, and summary judgment is not appropriate on this argument.

## II.  **Relief on the Merits**

Section 1983 provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights.  42 U.S.C. § 1983; see also Conn v. Gabbert, 526 U.S. 286, 290 (1999).  Thus, to state a claim for relief in an action brought under § 1983, a plaintiff must establish that he was deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law.  See Azer v. Connell, 306 F.3d 930, 935 (9th Cir. 2002).  Moreover, as is the case here, government officials may assert the defense of qualified immunity, which immunizes them from suit.  See Mitchell v. Forsyth, 472 U.S. 511, 526 (1985); accord Saucier v. Katz, 533 U.S. 194, 200-201 (2001).

The qualified immunity analysis proceeds in two stages.  The court must first inquire whether, in viewing the facts in a light

---

[1]  In fact, Plaintiff presents evidence he fully completed the administrative appeal process with respect to at least one of the disciplinary proceedings complained of in this action.

most favorable to plaintiff, a constitutional violation has been established.  <u>Saucier</u>, 533 U.S. at 201.  If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.  <u>Id</u>.  Conversely, if this threshold is passed, the court next examines whether defendants' actions violated "clearly established statutory or constitutional rights of which a reasonable person would have known."  <u>Id</u>.

### A. <u>Dental Care</u>

The Eighth Amendment prohibits the imposition of cruel and unusual punishments.  <u>Estelle v. Gamble</u>, 429 U.S. 97, 102 (1976).  A prison official violates the Eighth Amendment only when two requirements are met:  (1) the deprivation alleged must be, objectively, sufficiently serious; and (2) the prison official must have a sufficiently culpable state of mind.  <u>Farmer v. Brennan</u>, 511 U.S. 825, 834 (1994).

"'[T]he government has an obligation to provide medical care for those whom it punishes by incarceration,' and cannot be deliberately indifferent to the medical needs of its prisoners."  <u>McGuckin v. Smith</u>, 974 F.2d 1050, 1059 (9th Cir. 1992), <u>overruled on other grounds by</u> <u>WMX Tech., Inc. v. Miller</u>, 104 F.3d 1133, 1136 (9th Cir. 1997) (quoting <u>Estelle</u>, 429 U.S. at 104).  "A determination of 'deliberate indifference' involves an examination of two elements: the seriousness of the prisoner's medical need

and the nature of the defendant's response to that need." McGuckin, 974 F.2d at 1059.

"A 'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" Id. (quoting Estelle, 429 U.S. at 104.) "Examples of instances where a prisoner has a 'serious' need for medical attention include the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." Perez-Gutierrez v. Lampert, 2002 WL 31689536 * 6 (D. Or. September 30, 2002) (citations omitted).

The indifference to the serious medical need must be substantial; a constitutional violation is not established by mere negligence, an inadvertent failure to provide adequate medical care, or a difference of opinion between the prisoner and the physician over proper medical care. McGuckin, 974 F.2d at 1059; Anthony v. Dowdle, 853 F.2d 741, 743 (9th Cir. 1988); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989). The nature of a defendant's responses must be such that the defendant purposefully ignores or fails to respond to a prisoner's pain or possible medical need in order for "deliberate indifference" to be established. Perez-Gutierrez, 2002 WL 31689536 at *7 (citing

23 - FINDINGS AND RECOMMENDATION -

McGuckin, 974 F.2d at 1060. However, "an express intent to inflict unnecessary pain is not required." Whitley v. Albers, 475 U.S. 312, 319 (1986).

Dental care is one of the most important medical needs of inmates. Ramos v. Lamm, 639 F.2d 559, 576 (10th Cir. 1980), cert. denied, 450 U.S. 1041 (1981); see also Hunq v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989) (noting importance of providing dental care to prisoners). Therefore, the Eighth Amendment "requires that prisoners be provided with a system of ready access to adequate dental care." Hunt, 865 F.2d at 200-01 (citing Hoptowit v. Ray, 682 F.2d 1237, 1253 (9th Cir. 1982)). A cognizable claim alleging inadequate dental care "can be based on various factors, such as the pain suffered by the plaintiff, the deterioration of the teeth due to a lack of treatment, and the inability to engage in normal activities." Goodnow v. Palm, 264 F.Supp.2d 125, 132 (D. Vt. 2003) (citations omitted).

Plaintiff alleges he actively sought treatment for known and identified dental problems from the time he was initially incarcerated, in 1998, through the present. Despite recommendations dating from his initial dental examination, he has yet to receive a routine dental cleaning. While Defendants did provide treatment for immediate, acute dental needs, even that was not done timely on a least one occasion, as Plaintiff waited 103

days from the date he complained of a broken tooth before finally seeing a dentist.

Defendants argue any delays in Plaintiff's dental treatment are attributable to a back-log of inmates requiring services, illness of Dentists, and the absence of dental professionals at SRCI for some period of Plaintiff's incarceration. Defendants did not, however, present evidence indicating where Plaintiff fits into the back-log or priority list of patients or, with the exception of sweeping statements by Dr. Stevenson, whether a serious back-log actually existed during the time in question. See Goodnow, 264 F.Supp.2d at 134 (rejecting a "back-log" defense for similar reasons).

Moreover, the existence of a back-log or difficulty in hiring or retaining dental professionals does not, in itself, excuse Defendants from the obligation to provide care. If the prison's existing medical staff is not competent to examine, diagnose, or treat an inmate's medical problems, then they must "refer prisoners to others who can." Hoptowit, 682 F.2d at 1253 (9th Cir. 1982). "Budgetary constraints . . . do not justify cruel and unusual punishment." Jones v. Johnson, 781 F.2d 769, 771 (9th Cir. 1986).

Defendants also argue Plaintiff did not have a "serious" medical need, because he often appeared at sick call for other reasons, and did not complain of dental pain or problems every

time.  "It is common knowledge that dental pain and pain in general can be of fleeting intensity." <u>Goodnow</u>, 264 F.Supp.2d at 133.  Plaintiff presents ample evidence he complained on more than one occasion, through formal and informal channels, about dental pain and the need for treatment.  On more than one occasion, Defendants acknowledged Plaintiff's need for treatment, notifying him time and again that he was "on the list" and "would be scheduled."  The continued deterioration of Plaintiff's dental status over time is obvious from a review of the record, and Defendants' argument that his medical need is not sufficiently "serious" to rise to the level of an Eighth Amendment violation is without merit.  Accordingly, taken in the light most favorable to Plaintiff, the undisputed facts before this court establish a violation of a constitutional right.

Having reached this conclusion, the court must then determine whether Defendants are entitled to qualified immunity, *i.e.*, whether the constitutional right was clearly established. <u>Saucier</u>, 533 U.S. at 201.  To determine whether the right is clearly established, the court must consider whether it would clear to a reasonable official that his conduct was unlawful. <u>Id</u>.; <u>Jeffers v. Gomez</u>, 267 F.3d 895, 910 (9th Cir. 2001) (per curiam) (as amended).

At the time of Plaintiff's complaints, the law on deliberate indifference to medical needs was clearly established.  It would

be clear to a reasonable prison dentist that delaying treatment for a broken tooth for 103 days and delaying recommended dental hygiene services for more than five years in the face of an inmate's untreated pain and continued dental deterioration rises to the level of deliberate indifference. Hunt, 865 F.2d at 200-201. Accordingly, Defendants are not entitled to summary judgment on Plaintiff's denial of dental care claim on the basis of qualified immunity.

**B.   Medical Care**

As noted, to establish an Eighth Amendment cruel and unusual punishment claim for denial of medical care, a prisoner must establish deliberate indifference to a serious medical need. Estelle, 429 U.S. at 105. Plaintiff's claims of confusion or lapse in connection with his prescription medications and lack of access to aspirin for a headache in segregation do not rise to the level of a "serious medical need." Moreover, Defendants timely responded to Plaintiff's various medical complaints and provided treatment and prescription medications. Plaintiff fails to establish Defendants purposefully ignored or failed to respond to Plaintiff's medical needs, as required in order for deliberate indifference to be established. Accordingly, Defendants are entitled to summary judgment on Plaintiff's Eighth Amendment claims for denial of medical care.

## C.   Denial of Access to the Courts

Prisoners have a constitutional right of access to the courts.  <u>See</u> <u>Lewis v. Casey</u>, 518 U.S. 343, 346 (1996); <u>Bounds v. Smith</u>, 430 U.S. 817, 821 (1977).  This right "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." <u>Bounds</u>, 430 U.S. at 828.

The right of access "guarantees no particular methodology but rather the conferral of a capability -- the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts . . . ." <u>Lewis</u>, 518 U.S. at 356-57.  Stated differently, it is limited to non-frivolous direct criminal appeals, habeas corpus proceedings, and § 1983 actions.  <u>Id</u>. at 353 n.3 & 354-54.

To establish a violation of the right of access to the courts, a prisoner must establish that he suffered an actual injury.  <u>Lewis</u>, 518 U.S. at 349.  An "actual injury" is "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." <u>Id</u>. at 348.  The right of access to the courts is only a right to bring complaints to the federal court, and not a right to discover such claims or litigate them effectively once filed with a court.  <u>Id.</u> at 354-55; <u>see also</u> <u>Cornett v. Donovan</u>, 51 F.3d 894,

898 (9th Cir. 1995) (concluding the constitutional right of access requires a state to provide a law library or legal assistance only during the pleading stage of a habeas or civil rights action), cert. denied, 518 U.S. 1033 (1996).

Plaintiff does not present evidence he suffered any actual injury as a result of the alleged denial of access to legal materials. In fact, Defendants present evidence Plaintiff was provided ample opportunity not only to bring this complaint, but to effectively litigate it as well. Accordingly, the court finds no genuine issue of material fact with respect Plaintiff's denial of access claim, and Defendants are entitled to summary judgment.

**D.** **Due Process**

When a prison inmate faces disciplinary charges, due process requires prison officials to provide the prisoner with: (1) a written statement at least twenty-four hours before the disciplinary hearing that includes the charges, a description of the evidence against the prisoner, and an explanation for the disciplinary action taken; (2) an opportunity to present documentary evidence and call witnesses, unless calling witnesses would interfere with institutional security; (3) a written statement by the factfinder as to the evidence relied on and reasons for the disciplinary action; and (4) legal assistance where the charges are complex or the inmate is illiterate. Wolff v. McDonnell, 418 U.S. 539, 563-70 (1974). The requirements of

due process are further satisfied "if some evidence supports the decision by the prison disciplinary board . . . ." <u>Superintendent v. Hill</u>, 472 U.S. 445, 455 (1985). A violation of the prison's regulations in the context of a disciplinary proceeding does not violate the Due Process Clause so long as the minimal protections outlined in <u>Wolff</u> have been provided. <u>Walker v. Sumner</u>, 14 F.3d 1415, 1419-20 (9th Cir. 1994).

Plaintiff received the process due under <u>Wolff</u> in each of the disciplinary proceedings which were the subjects of his complaint. In each case, adequate evidence supported the disciplinary hearings officers' findings of guilt. Plaintiff's disagreement with the evidence and conclusions does not rise to the level of a genuine issue of material fact, and Defendants are entitled to summary judgment on these claims for relief.

### E. <u>Religious Persecution</u>

"The right to exercise religious practices and beliefs does not terminate at the prison door." <u>McElyea v. Babbitt</u>, 833 F.2d 196, 197 (9th Cir. 1987) (per curiam). Reasonable restrictions on First Amendment rights, however, may be imposed on inmates. Generally, a restriction is reasonable if there is "a valid, rational connection between the [restriction] and the legitimate governmental interest put forward to justify it" and the asserted governmental interest is "a legitimate and neutral one." <u>Allen v. Toombs</u>, 827 F.2d 563, 567 (9th Cir. 1987).

Defendants present evidence that the need to retrain inmates and modify their criminal thought process through inmate programming is a legitimate and neutral governmental interest. Moreover, there is no religious or non-religious subject matter in the curriculum for the Cognitive Skills series, although the course work supports an inmate's religious belief system as a part of the content of this particular series. Finally, participation in the cognitive skills programming is <u>not</u> required of all prisoners and, in any event, Plaintiff has now signed up to attend the courses in question. Accordingly, Defendants are entitled to summary judgment Plaintiff's "religious persecution" claim for relief.

## **RECOMMENDATION**

Based on the foregoing, I recommend that Plaintiff's Cross-Motion for Summary Judgment (#133) be DENIED, and that Defendants' Amended Motion for Summary Judgment (#79) be GRANTED IN PART and DENIED IN PART. Defendants' motion should be DENIED as to Plaintiff's Eighth Amendment cruel and unusual punishment claim he was denied dental treatment. Defendants' motion should be GRANTED as to Plaintiff's remaining claims for relief.

## **SCHEDULING ORDER**

Objections to these Findings and Recommendation(s), if any, are due May 27, 2005. If no objections are filed, the Findings

and Recommendation(s) will be referred to a district court judge and go under advisement on that date.

If objections are filed, the response is due no later than June 10, 2005. When the response is due or filed, whichever date is earlier, the Findings and Recommendation(s) will be referred to a district court judge and go under advisement.

DATED this _____ day of May, 2005.


_____
Donald C. Ashmanskas
United States Magistrate Judge